IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARC STEIN,                              :
                                         :
            Plaintiff,                   :
                                         :        CIVIL ACTION
                                         :
      v.                                 :        NO. 13-4644
                                         :
CITY OF PHILADELPHIA, et al.,            :
                                         :
            Defendants.                  :

## MEMORANDUM OPINION

Tucker, C.J.                                    December ____, 2013

      Presently before this Court are Defendants Northern Liberties Neighbors Association,

Matt Ruben, Larry Freedman, David Witz, Judy Donovan, Richard Donovan, James Brossy, and

Debbie Rudman's Motion to Dismiss (Doc. 4);[1] Plaintiff's Response in Opposition thereto

(Doc. 10); and Defendants' Reply (Doc. 14). For the reasons set forth below, this Court will

grant in part and deny in part Defendants' Motion to Dismiss. This Court grants Plaintiff leave

to amend its Complaint as to its tortious interference with prospective contractual relations claim

only; it declines to grant Plaintiff leave to amend any other claims.

## I. BACKGROUND

      Plaintiff Marc Stein d/b/a 626 Front LLC a.k.a Aura Restaurant and Lounge ("Plaintiff"),

has brought this action against fifteen (15) defendants,[2] alleging that its rights under the First and

---

[1] Christopher Sawyer, one of the original NLNA Defendants bringing the instant motion, has withdrawn his Motion to Dismiss (Doc. 26) and filed an Answer (Doc. 27).
[2] Since the Complaint's filing, the City of Philadelphia Police Department (Doc. 23) and NorthernLiberties.org (Doc, 17) have been terminated as parties to this action.

Fourteenth Amendments to the Constitution, 42 U.S.C. §§ 1983 and 1981, and the laws and statutes of the Commonwealth of Pennsylvania have been violated. (Compl. ¶ 4). Plaintiff alleges, *inter alia*, that private defendants conspired with the City of Philadelphia, and the City of Philadelphia Police Department, to maliciously and purposefully deprive Plaintiff of its legal rights. (Compl. ¶ 8). Specifically, Plaintiff claims that Defendants have engaged in a comprehensive and purposeful campaign against it and, as a result, its application for a Special Assembly and Amusement License was denied.

Plaintiff is a restaurant and bar, owned by Marc Stein, operating at 628 North Front Street in the Northern Liberties section of Philadelphia. (Compl. ¶¶ 13-14). Defendants include the Northern Liberties Neighbors Association ("NLNA"), a private civic association, and several of its alleged members. On January 28, 2012, Plaintiff opened with a disc jockey and dancing, primarily catering to an "upscale urban" African-American demographic. (Compl. ¶¶ 28-30). To operate, Plaintiff was required to obtain a Special Assembly and Amusement License issued by the City of Philadelphia. (Compl. ¶ 32). Without this license, Plaintiff could not have a disc jockey, and dancing would have been prohibited in the establishment. (Compl. ¶ 45). Plaintiff contends that although it obtained all the necessary prerequisites for the Special Assembly and Amusement License, its application was denied by the City of Philadelphia Board of Review on May 29, 2012. (Compl. ¶35). This decision was affirmed on appeal. (See Compl. Ex. E).

Plaintiff avers that its license application was denied, in part, because of Defendants' strong opposition to its operation. (Compl. ¶ 36). According to Plaintiff, the Philadelphia Police Department, 6th District opposed the Special Assembly and Amusement License application because the NLNA informed it that Plaintiff was operating illegally. (Compl. ¶ 37). In addition, Plaintiff argues that the NLNA and other members of the Northern Liberties community have

continuously attempted to inhibit Plaintiff's business operations. (Compl. ¶38). Specifically, Plaintiff states that the NLNA and its members have (i) photographed Plaintiff's patrons and their activities, (ii) directed negative comments to Plaintiff's patrons and staff during events, (iii) attacked Plaintiff on social networking sites, blogs, and emails, and (iv) filed a number of unfounded complaints with the City of Philadelphia Police Department. (Compl. ¶ 40). Plaintiff argues that it has been unfairly targeted because it caters to an "upscale urban" African-American demographic. (Compl. ¶42). Plaintiff avers that although a number of nightlife locations generate business in the Northern Liberties area, neighbors and NLNA members try to attribute negative activity in the area solely to Plaintiff. (Compl. ¶ 41). Due to Defendants' opposition campaign, Plaintiff says that it has been unable to operate in the manner in which it was conceived, and has sustained a substantial loss of business. (Compl. ¶¶ 47-48).


## II. STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000). While a court will accept well-pled allegations as true for the purposes of the motion, it

will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping

legal conclusions cast in the form of factual allegations.  Morse v. Lower Merion Sch. Dist., 132

F.3d 902, 906 (3d Cir. 1997).  On the contrary, "[t]he pleader is required to 'set forth sufficient

information to outline the elements of his claim or to permit inferences to be drawn that these

elements exist.'"  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).


## III. DISCUSSION

Defendants have raised several arguments in support of dismissing this action.  This Court will

address each of these arguments in turn.

### A.   42 U.S.C. § 1981

First,  Defendants contend that Counts V, VI, VII, IX, XIII, and XIV should be dismissed

because Defendants are not state actors, and therefore are not liable under 42 U.S.C. §§ 1981 and

1983.[3]  As support for this claim, Defendants cite Vurimindi v. City of Philadelphia, No. 10-

0088, 2010 U.S. Dist. LEXIS 82762 (E.D. Pa. 2010), in which this District held that a civic

association is not a state actor for § 1983 purposes.  This Court agrees with Plaintiff that

Defendants have misapplied a §1983 standard to Plaintiff's § 1981 claims.  Plaintiff does not

make any reference to § 1983 within the counts at issue, which are all entitled "Discrimination

by Interfering with a Contractual Interest, 42 U.S.C. § 1981."  Puzzlingly, Defendants apply a

§1983 standard in the instant motion, contending that Defendants do not qualify as state actors

under this statute.  This § 1983 analysis is clearly inapposite to claims arising under § 1981

because § 1981 is not limited to activity by state actors.  42 U.S.C. § 1981(a) states:

---

[3] This Court declines to address Defendants' conspiracy and § 1983 equal protection challenges because the instant counts are clearly and solely framed under § 1981 as discrimination through interference with a contractual interest claims.

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

The rights protected by this section are protected against impairment by both state actors and private citizens. 42 U.S.C. § 1981(c); see also Brown v. Philip Morris, Inc., 250 F.3d 789, 797 (3d Cir. 2001) ("In neither [§§1981 nor 1982] . . . need a plaintiff allege state action on the part of the defendant.").

Looking at the motion to dismiss in isolation, Defendants have therefore not appropriately addressed Plaintiff's claims. Defendants have, however, referenced Plaintiff's § 1981 claims in their Reply. Although this brief should be stricken from the record,[4] this Court, acting within its discretion, will consider it. Therefore this Court reviews Defendants' Reply, which argues that Plaintiff's § 1981 claims are meritless because (i) Plaintiff Marc Stein is not a racial minority, and (ii) Plaintiff has failed to allege that Defendants' conduct has interfered with its contractual interests.

To state a valid claim under § 1981, a plaintiff must show (1) that he or she is a member of a racial minority, (2) intent to discriminate on the basis of race by the defendant, and (3) discrimination concerning one or more of the activities enumerated in the statute, which includes the right to make and enforce contracts. Brown, 250 F.3d at 797 (quoting Yelverton v. Lehman, No. Civ. A. 94-6114, 1996 U.S. Dist. LEXIS 7651 (E.D. Pa. June 3, 1996)). To satisfy the first element, a plaintiff who is not a member of a minority group may bring suit under the statute if he or she has suffered injury as a result of discriminatory conduct directed against such group.

---

[4] Without requesting leave to do so, Defendants filed their Reply on September 28, 2013 (Doc. 14). According to this Court's Policies and Procedures, requests for time to file a Reply should be made by written motion because these briefs are generally discouraged. See Chief Judge Tucker's Policies and Procedures, *available at* http://www.paed.uscourts.gov/documents/procedures/tucpol.pdf. Defendants therefore failed to follow the Policies and Procedures of this Court by filing their Reply without prior leave of the Court.

See Riccobono v. Whitpain Tp., 497 F. Supp. 1364, 1373 (E.D. Pa. 1980) (holding that a white plaintiff had standing to bring suit under § 1981 for the injury he suffered because the defendants believed he was willing to contract and do business with members of minority groups); Des Vergnes v. Seekonk Water District, 601 F.2d 9, 14 (1st Cir. 1979) ("[A] person has an implied Right of action against any other person who, with a racially discriminatory intent, injures him because he made contracts with non-whites.").

1.  **Count V**

In Count V of the Complaint, Plaintiff brings a § 1981 claim against David Witz, an alleged member of the NLNA. In determining whether the first element of a § 1981 claim is satisfied, this Court chooses to defer to this District's holding in Riccobono. In that case, a white plaintiff, who wanted to build an indoor roller skating rink on property he owned in Whitpain Township, brought suit under § 1981 against a number of defendants, including two private civic associations and their members. The plaintiff alleged that although the County's planning commission had recommended approval of his building permit application, and the Township Engineer found his application met all necessary requirements, the Township Planning Commission recommended that his application be denied. Riccobono, 497 F. Supp. at 1368. The Riccobono plaintiff averred that members of the Planning Commission and other community actors worked together to thwart his efforts to acquire a building permit because they believed that his roller rink would attract black people into the area. Id. The Riccobono Court, finding that the plaintiff potentially could have suffered injuries because defendants believed he was willing to contract and do business with African Americans, held that the plaintiff had standing to bring his § 1981 claim. Id. at 1373. Riccobono is comparable to the instant case. Plaintiff Marc Stein, a white restaurant and bar owner, has brought suit under § 1981 claiming that the

6

actions of the Defendant and others have prevented him from serving his primarily African-American clientele. Therefore, this Court finds that the first § 1981 element is satisfied as to Defendant David Witz, as well as to all other Defendants noted in this challenge.

Plaintiff's Count V must be dismissed, however, because it has failed to satisfy the second element of the § 1981 test: intent to discriminate on the basis of race by the defendant. In Paragraph 96 of the Complaint, Plaintiff states "Plaintiff target demographic is 'upscale urban.' Although the Plaintiff is not a minority his club is patronized by a crowd comprised of minorities, mainly persons of African American or Hispanic heritage." This paragraph does allude to the fact that there are potential racial implications in this case. However, in the remainder of the count, Plaintiff fails to allege any *intent* to discriminate on the basis of race by Defendant David Witz. Plaintiff does plead facts that Defendant engaged in hostile activity in order to remove Plaintiff from the community, (Compl. ¶¶ 97-104), but simply does not plead any facts establishing a racially discriminatory intent behind these actions. Therefore, because the second element has not been satisfied, this Court need not turn to consideration of the third element, and agrees with Defendants that this Count against Defendant David Witz should be dismissed.

### 2. **Count VI**

Next, plaintiff brings a § 1981 claim against the NLNA in Count VI. As discussed *supra*, Plaintiff has satisfied the first element of a § 1981 claim. Plaintiff also satisfies the second element because a reasonable inference may be drawn from the pleadings that the NLNA acted with a racially discriminatory intent. Plaintiff claims that after Defendant Matt Ruben discovered that Plaintiff's target demographic was African-American and Hispanic persons, he, representing the NLNA, spoke against Plaintiff at a Special Assembly License Hearing. (Compl.

at ¶ 108).  Plaintiff also states that, "[t]he NLNA through its agents have singled out Plaintiff and made it a goal to shut down their operations solely because of the patrons Plaintiff has coming out to its events."  (Compl. at ¶ 109).  Accepting these allegations as true, Plaintiff has plead sufficient facts to show that Defendant NLNA's actions against Plaintiff had a racially discriminatory intent.  The third element, that the discrimination concern one of the rights enumerated in § 1981, again requires turning to Riccobono.  In that case, the Court determined that the plaintiff had a basis for remedy under § 1981 because he was willing to contract and do business with African Americans by servicing African Americans at his roller rink, but was unable to obtain the necessary building permit because of defendants' discriminatory conduct.  Riccobono, 497 F. Supp. at 1373.  Here, following Riccobono, Plaintiff has a basis for remedy under § 1981 because he desires to contract and do business with African Americans and Hispanic persons who patronize his club, but was allegedly unable to obtain the necessary Special Assembly License because of Defendant's discriminatory conduct.  This Court thus finds the holding in Riccobono persuasive, and the third element satisfied.  Defendants' Motion as to Count VI is therefore denied.

### 3.  **Count VII**

In Count VII of the Complaint, Plaintiff brings a § 1981 claim against Matt Ruben in his capacity as President of the Board of the Directors of the NLNA.  Plaintiff pleads the same basic facts as in Count VI, such as Defendant Ruben speaking on behalf of the NLNA at the license hearing, but also adds additional actions taken by Defendant Ruben individually after he learned of Plaintiff's target African-American demographic.  (Compl. ¶¶ 117-123).  Thus, deferring to our Count VI analysis, this Court finds that Plaintiff has plead a viable § 1981 claim against Defendant Matt Ruben in his individual capacity.  Therefore, Defendants' Motion is denied as to

8

Count VII.

### 4.  **Counts IX, XIII, and XIV**

In Count IX, Plaintiff brings a § 1981 claim against Larry Freedman in his capacity as the Zoning Committee Chair of the NLNA.  In Counts XIII and XIV, Plaintiff brings said claim against Defendants James Brossy and Debbie Rudman respectively, Plaintiff's neighbors and alleged NLNA members.  Counts IX, XIII, and XIV must be dismissed because Plaintiff has failed to plead racially discriminatory intent, and thus has not satisfied the second element of the § 1981 standard.  Plaintiff again pleads in each count that its target demographic is an "upscale urban" African American and Latino clientele, but fails to plead any facts that demonstrate that Larry Freedman, acting either as an individual or an NLNA representative, James Brossy, or Debbie Rudman, intended to discriminate against Plaintiff on the basis of race.  Unlike Count VII, in which Plaintiff plead facts to demonstrate that Defendant Matt Ruben took specific actions after discovering Plaintiff's target demographic, Plaintiff does not plead any facts to suggest that Defendants acted in a discriminatory fashion in these counts.  Plaintiff's only allegations that connect said Defendants with purposeful action are contained in Paragraphs 141 180, and 189, which state that each of the instant Defendants "spends a substantial amount of time and exerts disproportionate energy in pursuit of removing Plaintiff from the Northern Liberties neighborhood." (Compl. ¶ 141, 180, 189).  This vague language, devoid of any specific intentional acts by Defendants Freedman, Brossy, and Rudman, fails to satisfy the second element of a § 1981 claim.  Thus, Counts IX, XIII, and XIV must be dismissed.

### B.  **Judicially Privileged Statements**

Defendants also argue that any claims Plaintiff made regarding NLNA meeting

statements must be dismissed because such statements are judicially privileged.[5]  The only

Counts that reference statements made at an NLNA meeting are Counts VII and VIII, which

reference a meeting that took place on or around July 3, 2012 at the NLNA's community

building.  (Compl. ¶¶ 118, 130; Ex. S).  Although the purpose of the NLNA meeting was to

discuss a local Northern Liberties shooting, Plaintiff's operations were discussed at the

beginning of the meeting.  (See Ex. S).  During that time, Defendant Matt Ruben discussed the

"unfounded claim that Plaintiff is operating illegally."  (Compl. ¶¶ 118, 130).  Defendants

contend that these statements are judicially privileged because the Philadelphia Code requires the

City to take community concerns into consideration before issuing special assembly licenses.  As

support for its challenge, Defendants cite two Pennsylvania Supreme Court cases, Binder v.

Triangle Publications, Inc., 442 Pa. 319, 323 (Pa. 1971) and Greenberg v. Aetna Ins. Co., 235

A.2d 576, 577 (Pa. 1967), for the limited proposition that the judicial privilege exists because the

courts have internal sanctions against defamatory statements.  Because Defendants fail to

establish that statements made during the July 3, 2012 NLNA meeting were preliminary to, or

part of, a City judicial or quasi-judicial proceeding, their Motion to Dismiss claims pertaining to

NLNA meeting statements based on the existence of judicial privilege is denied.

Pennsylvania's judicial privilege standard incorporates Section 587 of the Restatement

(Second) of Torts.  Schanne v. Addis, 898 F. Supp. 2d 751, 755 (E.D. Pa. 2012).  Parties in

litigation are given an absolute privilege with regard to statements that relate to a judicial

proceeding if the communications are preliminary to, instituting, or part of the proceeding.  Id.

(citing Pawlowski v. Smorto, 403 Pa. Super. 71, 588 A.2d 36, 42 (1991)); Chicarelli v. Plymouth

Garden Apartments, 551 F. Supp. 532, 541 (E.D. Pa. 1982) (citing Triester v. 191 Tenants Assn.,

---

[5] Defendants fail to reference any specific counts from the Complaint in this challenge.

272 Pa. Super. 271, 415 A.2d 698 (1979)).  This privilege also extends to witnesses, in that "a witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as part of a judicial proceeding in which he [or she] is testifying, if it has some relation to the proceeding." Schanne, 898 F. Supp. 2d at 755. "When alleged libelous or defamatory matters, or statements, or allegations and averments in pleadings or in the trial or argument of a case are pertinent, relevant and material to any issue in a civil suit, there is no civil liability for making any of them." Milliner v. Enck, 709 A.2d 417, 419 (Pa. Super. Ct. 1998).  A "judicial proceeding" wherein absolute privilege attaches includes "any hearing before a tribunal which performs a judicial function, including many administrative officers, boards and commissions, so far as they have the powers of discretion in applying the law to the facts which are regarded as judicial or 'quasi-judicial' in character." Overall v. University of Pa., 412 F.3d 492, 496 (3d Cir. 2005) (quoting Milliner, 709 A.2d at 419 n.1).  "Pennsylvania cases finding quasi-judicial privilege consistently involve proceedings before federal, state, or local governmental bodies, or proceedings held pursuant to a statute or administrative regulation." Id. at 497; see also Milliner, 709 A.2d at 419 n. 1.

Judicial privilege does not apply to statements made at the NLNA meeting for a number of reasons.  First, counter to Defendants' position, Plaintiff has not plead any facts that show the statements made at this meeting were taken into account by the City during a judicial or quasi-judicial proceeding to determine whether Plaintiff's Special Assembly Occupancy License would be approved or denied.  In fact, there are no facts in the Complaint that demonstrate that statements made at the July 3, 2012 NLNA meeting were even known by the City.  Second, this Court agrees with Plaintiff that Binder and Greenberg are distinguishable from the instant action, in that they refer to the judicial privilege's applicability to a newspaper account of statements

11

during a criminal proceeding and responsive pleadings, respectively.  The fact patterns in these

cases, which directly involve statements made at judicial proceedings and in court documents,

are clearly distinct from statements made at a non-judicial civic association meeting.  Third,

although Plaintiff argues that Defendants proffer no applicable case law for this claim in their

motion, Defendants fail to respond to this contention, or to even address the judicial privilege

argument at all, in their Reply.  Therefore, because Defendants have done nothing more than to

make a cursory argument that the statements made at this NLNA meeting were taken into

account by the City, its motion to dismiss all claims relating to said statements based on a

judicial privilege argument is denied.

### C.   Defamation

Defendants next contend that Plaintiff's defamation claims contained in Counts IV, VIII,

X, XI, and XII are either time barred under the statute of limitations, or do not establish that the

statements at issue are defamatory.  Specifically, Defendants aver that alleged defamatory

statements made by Defendants David Witz, Matt Ruben, Larry Freedman, Judy Donovan, and

Richard Donovan fall outside the applicable statute of limitations for defamation claims.

Defendants also argue that alleged defamatory statements made by Defendant David Witz within

the statute of limitations are not in fact defamatory.

### 1.  Statute of Limitations

The statute of limitations for defamation claims is one year from the date of publication.

42 Pa. C.S. § 5523(1); Cole v. Ferranti, No. 12-2961, 2013 WL 4505449 (3d Cir. Aug. 21, 2013).

The statute begins to run from the time of publication.  Wolk v. Olson, 730 F. Supp. 2d 376, 377

(E.D. Pa. 2010); Dominiak v. Nat'l Enquirer, 439 Pa. 222, 266 A.2d 626, 629-30 (1970).  The

discovery rule may operate to toll the statute of limitations in cases where the plaintiff is unable,

12

despite the exercise of reasonable diligence, to know that he or she is injured, and by what cause. Wolk, 730 F. Supp. 2d at 377 (quoting Fine v. Checcio, 582 Pa. 253, 870 A.2d 850, 858 (2005)). "The discovery rule provides: '[W]here the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible.'"  Brown v. Davita Inc., No. 09-3892, 2011 WL 5523823, at *3 (E.D. Pa. Nov. 14, 2011) (quoting Gatling v. Eaton Corp., 807 A.2d 283, 289 (Pa. Super. Ct. 2002).  This District has repeatedly held that the discovery rule is inapplicable to mass-media defamation claims. See  Wolk, 730 F. Supp. 2d at 379 (declining to apply discovery rule to defamation published on website article); Drozdowski v. Callahan, No. 07-cv-01233-JF, 2008 WL 375110, at *1 (E.D. Pa. Feb. 12, 2008) (declining to apply the discovery rule to defamation published in book); Barrett v. Catacombs Press, 64 F. Supp. 2d 440, 446 (E.D. Pa. 1999) (finding that discovery rule did not apply to defamatory statements in widely-distributed book) ; Bradford v. Am. Media Operations, Inc., 882 F. Supp. 1508, 1519 (E.D. Pa. 1995) (holding that the discovery rule could not apply to defamation in the widely distributed *Star* newspaper).

This Court agrees that some of Defendants' alleged defamatory statements are time-barred under the one-year statute of limitations for defamation claims.  This Court, following this District's guidance, declines to apply the discovery rule to Plaintiff's mass-media defamation claims.  The instant Complaint was filed on August 12, 2013.  Therefore, all alleged defamatory statements published prior to August 12, 2012, one year before Plaintiff filed its Complaint, are dismissed. First, Count IV is thus dismissed as to the following statements made by Defendant David Witz: (i) April 6, 2012 Twitter statement – "I'll be on Fox 29 at 10 pm …bitching about our block's nuisance dance club" (Exhibit H); (ii) May 23, 2012 Twitter statement- "Club Aura:

Grand opening, grand closing?" (Exhibit J); (iii) June 21, 2012 Twitter statement – "Here's why Club Aura was shut down…" with link to Philebrity article "Fare thee well, Club Plaintiff: you totally sucked" (Exhibit K); (iv) June 21, 2012 Twitter statement – "Farewell Club Aura.  You will not be missed."; (v) June 27, 2012 Twitter statement – "Nuisance bar Club Aura appealed their cease-operations notice.  The hearing was yesterday.  They lost.  The neighbors rejoice." (Exhibit M); (vi) June 27, 2012 Northern Liberties.org message board statement (Exhibit N);[6] June 29, 2012 Northern Liberties.org message board statement (Exhibit O); August 9, 2012 Twitter statement – "Farewell, Club Aura. For good this time." (Exhibit P). [7]  Second, Count VIII is dismissed as to statements made by Defendant Matt Ruben at the meeting that took place on or around July 3, 2012.  These statements were published in a July 3, 2012 Broad Street Media online article.  (See Ex. S).  Third, Count X against Defendant Larry Freedman is dismissed in its entirety because that count's alleged defamatory statement occurred on June 21, 2012, over a year before the Complaint was filed.  Further, Counts XI and XII against Defendants Judy and Richard Donovan are also dismissed as to the time-barred August 10, 2012 alleged defamatory statement on Philebrity.com.

This Court declines, however, to dismiss Count VIII as to alleged defamatory statements made by Defendant Matt Ruben in a July 30, 2012 email (Compl. ¶130(b)), or Counts XI and XII as to alleged defamatory statements made by Defendants Judy Donovan and Richard

---

[6] In Paragraph 87(g)-(h) of the Complaint, Plaintiff contends that two "emails" from Defendant David Witz, one dated June 27, 2012 and the other dated June 29, 2012, are defamatory statements.  Upon review of cited Exhibits N and O, however, the alleged emails are in fact messages posted to the Northernliberties.org public message board.  Thus, this Court will consider them as such.

[7] This Court declines to consider Defendants' claims pertaining to the allegation contained in Paragraph 87(b) of the Complaint at this time.  Plaintiff states "David Witz moved out of Northern Liberties next door to Plaintiff on May 15, 2012.  Yet he continued to harass Plaintiff through Social Media.  Exhibit I." (Compl. ¶ 87(b)).  Exhibit I appears to be a document listing actions taken by Defendants David Witz and Judy Donovan on April 1st and April 2nd of an unstated year.  In addition, the Exhibit records that a $100 check was sent to "City of Phila" on April 3rd of an unstated year.  Because this Court cannot decipher what this document is, and/or if it was actually displayed through social media, the Court will reserve decision on this allegation.

Donovan in an April 2, 2012 email to Plaintiff's landlord, Yishai Kedar. (Compl. ¶¶ 159(a),170(a)). Although this District has held that the discovery rule is inapplicable to mass-media defamation claims, the rule has not been similarly extended to private emails. See Kia v. Imaging Sciences Intern., Inc., 735 F. Supp. 2d 256 (E.D. Pa. 2010) (declining to grant motion for summary judgment pertaining to  alleged defamatory statements, including those made via email, because there was a genuine issue of material fact as to when Plaintiff learned of injury); Giordano v. Claudio, 714 F. Supp. 2d 508 (E.D. Pa. 2010) (denying motion to dismiss relating to alleged defamatory email statements because there was factual question pertaining to applicability of the discovery rule).  Because the point at which Plaintiff became aware of these emails cannot be determined based on the pleadings, this is a matter best left to further development through discovery.  Therefore, this Court will deny the motion as to these allegations.

### 2.  **Prima facie defamation claim**

Defendants additionally argue that the alleged defamatory statement made by Defendant David Witz that falls within the applicable statute of limitations is not defamatory.  The alleged defamatory statement at issue is Defendant's October 4, 2012 post to NorthernLiberties.org titled "Club Aura Loses another club."  (Compl. ¶ 87(j), Ex. Q).  Defendants contend, *inter alia*, that the statement is merely a statement of opinion, and is therefore not defamatory.

"In Pennsylvania, the Uniform Single Public Act, 42 Pa C.S. §§ 8341-8345, sets forth the elements of a *prima facie* case in a defamation action."  Weaver v. Lancaster Newspapers, Inc., 592 Pa. 458, 465 (2007).  In these cases, the burden is on the plaintiff to prove: (1) the defamatory character of the communication, (2) its publication by the defendant, (3) its application to the plaintiff, (4) the understanding by the recipient of its defamatory meaning, (5)

the understanding by the recipient of it as intended to be applied to the plaintiff, (6) special harm

resulting to the plaintiff from its publication, (7) abuse of a conditionally privileged occasion. Id.

at 465-66. "It is for the court to determine whether statements complained of by the plaintiff are

capable of defamatory meaning." Kreimer v. Philadelphia Inquirer, Inc., No. 03-cv-6669, 2004

WL 1196258, at *2 (E.D. Pa. May 27, 2004) (quoting Smith v. School Dist. Of Phila., 112 F.

Supp. 2d 417, 429 (E.D. Pa. 2000)). "A communication is defamatory if it tends to harm the

reputation of another as to lower him in the estimation of the community or to deter third persons

from associating or dealing with him." Franklin Prescriptions, Inc. v. The New York Times Co.,

267 F.Supp.2d 425, 434 (E.D. Pa. 2003) (quoting Maier v. Maretti, 448 Pa. Super. 276, 283 671

A.2d 701, 704 (1995). In determining whether a communication is defamatory, the Court must

also consider "the effect the communication is fairly calculated to produce, the impression it

would naturally engender in the minds of the average persons among whom it is intended to

circulate." Id. (quoting Osby v. A & E Tel. Networks, No. Civ.A.96-7347, 1997 WL 338855

(E.D. Pa. June 17, 1997)).

Statements of opinion, without more, are not actionable. Green v. Mizner, 692 A.2d 169,

174 (Pa. Super. Ct. 1997) (citing Mathias v. Carpenter, 402 Pa. Super. 358, 587 A.2d 1, 2-3

(1991)). "Expressions of opinions, that rise only to the level of annoyance or embarrassment do

not provide a basis for a defamation claim." Kreimer, 2004 WL 1196258 at *2 (citing Parano v.

O'Connor, 641 A.2d 607, 574-75 (Pa. Super. 1994)). Under Section 566 of the Restatement

(Second) of Torts, which has been adopted by Pennsylvania courts, "[a] defamatory

communication may consist of a statement in the form of an opinion, but a statement of this

nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis

for the opinion." Roffman v. Trump, 754 F. Supp. 411, 418-419 (E.D. Pa. 1990). Comment (c)

16

of Section 566 continues:

> A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is. But an expression of opinion that is not based on disclosed or assumed facts and therefore implies that there are undisclosed facts on which the opinion is based, is treated differently. The difference lies in the effect upon the recipient of the communication. In the first case, the communication itself indicates to him that there is no defamatory factual statement. In the second, it does not, and if the recipient draws the reasonable conclusion that the derogatory opinion expressed in the comment must have been based on undisclosed defamatory facts, the defendant is subject to liability.

Restatement (Second) of Torts, § 566, Comment (c).

As previously stated, the only timely defamation claim against Defendant Witz concerns his October 4, 2012 NorthernLiberties.org post. Defendants aver that the statement is an opinion, and is therefore not actionable on a defamation claim. The full text of the alleged statement is as follows:

> Club Aura's sister nightmare in Old City, Dreemz aka Rain, has finally been shut down by the city. Reason: no special assembly license (and a LOT of neighbor complaints).

> The special assembly license is needed for live music, DJs, dance floors and such. The owner of Dreemz aka Rain is Marc Stein, who owns Club Aura, and he never bothered to get a special assembly license for that club, either. That's why Aura is partially shut down now. I can only hope his getting caught and shut down in Old City means the Northern Liberties neighbors of Aura may finally get some relief from this toxic, unlicensed dance club.

(See Ex. Q).

This Court agrees with Defendants, and concludes that, even accepting all allegations as true, Plaintiff has failed to plead sufficient facts to make out a viable defamation claim. First, the Complaint itself demonstrates that Defendant's statement is not defamatory. Plaintiff states that it opened as a restaurant and bar with a disc jockey and dancing on January 28, 2012. (Compl. ¶ 28). As such an establishment, it was required to obtain a Special Assembly and Amusement

17

License from the City.  (Compl. ¶ 32).  However, after Plaintiff had already been operating for

four months, its application for a Special Assembly and Amusement License was denied on May

29, 2012. (Compl. ¶35). [8]  As a result of this denial, Plaintiff was ordered to cease operations.

(See Ex. E).  Therefore, Plaintiff itself acknowledges that (i) it was operating for a time without

the required Special Assembly and Amusement License, (ii) its license application was denied,

and (iii) it was subject to a cease operations decision because it did not have a Special Assembly

and Amusement License. [9]  Thus, Defendant's statements regarding Club Aura, however

derogatory, merely reflect facts that would have been known and available to anyone familiar

with Plaintiff and its operations.  Second, the public record also supports dismissal of this

claim.[10]  Any member of the public can access the City of Philadelphia's website, which keeps a

database of all business violations, including license violations, and see that both Club Aura and

Club Dreemz aka Rain were ordered to cease operations for failure to procure the necessary

special assembly licenses.[11]  Third, it is undisputed that Marc Stein is the owner of Club Aura,

and that a Special Assembly License is required for restaurants and nightclubs with dancing and

a lawful occupancy of over 50 people.[12]  Therefore, the entirety of Defendant's statement,

---

[8] Plaintiff states that its Special Assembly and Amusement License was "revoked" on June 27, 2012, and cites to Exhibit E for this statement.  (Compl. ¶ 43).  However, Exhibit E is in actuality a copy of the denial of Plaintiff's appeal of the May 29, 2012 decision, and a letter explaining this denial. See Ex. E.

[9] This Court declines to consider Plaintiff's contention that it was given a temporary Special Assembly License while the City processed its application for renewal, a statement which first appears in Plaintiff's Response to the Motion to Dismiss, because this fact was not plead in the Complaint.

[10] "In considering a Rule 12(b)(6) motion, a court must primarily consider the allegations contained in the complaint, although matters of *public record*, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account."  Johnson v. Hill, 910 F. Supp 218, 219 (E.D. Pa. 1996) (quoting Chester County Intermediate Unit, v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990) (emphasis added).  Pages found on the City of Philadelphia Website are matters  of public record.

[11] See City of Philadelphia, *120 Chestnut St., Philadelphia, Pa*,
http://www.phila.gov/data/Pages/default.aspx?entity=violationdetails&eid=336992 (last visited November 8, 2013);
City of Philadelphia, *624 N Front St., Philadelphia, Pa*,
http://www.phila.gov/data/Pages/default.aspx?entity=violationdetails&eid=331788 (last visited November 8, 2013);
City of Philadelphia, *624  Front St., Philadelphia, Pa*,
http://www.phila.gov/data/Pages/default.aspx?entity=violationdetails&eid=343270 (last visited November 8, 2013).
[12] See City of Philadelphia Business Services, *Special Assembly Occupancy License*,
https://business.phila.gov/Pages/SpecialAssemblyOccupancyLicense.aspx?stage=start&type=all%20business%20ty

including his contention "I can only hope his getting caught and shut down in Old City means the Northern Liberties neighbors of Aura may finally get some relief from this toxic, unlicensed dance club," sound in opinion based on disclosed and nondefamatory facts.  The communication therefore indicates to the recipient of the communication that there is no defamatory factual statement based on undisclosed facts.  As such, Plaintiff's defamation claim against Defendant David Witz is not actionable under Pennsylvania law.  Defendants' motion to dismiss this alleged defamatory statement is therefore granted.[13]

### D.    Tortious Interference with Prospective Contractual Relations

In Count XVIII, Plaintiff brings a state common law claim for "tortious interference with business" against Defendants, who contend that Plaintiff's pleading is insufficient because it fails to identify which specific contractual relationships were affected by Defendants' alleged actions.[14]  Under Pennsylvania law, the elements of a tortious interference with prospective contractual relations claim are: (1) a prospective contractual relation, (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring, (3) the absence of privilege or justification, and (4) actual harm or damage.  A.D.E. Food Services Corp. v. City of Philadelphia, No. 95-7485 1997 U.S. Dist. LEXIS 15753, at *36 (E.D. Pa. Oct. 9, 1997) (citing Thompson Coal Co. v. Pike Coal Co.,488 Pa. 198, 412 A.2d 466, 471 (Pa. 1979)).  "A prospective contractual relation is 'something less than an contractual right, something more than a mere hope.'"  Id.  The plaintiff must establish a "reasonable likelihood or probability" that a contractual relationship would have occurred.  Id. (quoting Tose v. First Pennsylvania Bank,

---

pes&section=Licensing%20%26%20Regulations&BSPContentListItem=Special%20Assembly) (last visited November 8, 2013).
[13] Because this Court has granted the motion to dismiss on Defendants' opinion argument, it will not consider Defendants' contention that Plaintiff is a limited purpose public figure.
[14] This Court will construe this count as a tortious interference with prospective contractual relations claim based on Plaintiff's Response to Defendants' Motions to Dismiss, in which it frames this count as such a claim.

N.A., 648 F.2d 879, 898 (3d Cir. 1981).  Prospective contractual relations are by definition more

difficult to precisely identify than existing ones, but a plaintiff must identify the type of contracts

allegedly harmed by a defendant's conduct.  See A.D.E. Food Services Corp. v. City of

Philadelphia, No. 95-cv-7485, 1996 WL 590906, at * 9 (E.D. Pa. Oct. 11, 1996).

　　　　This Court finds that Plaintiff has not sufficiently plead a tortious interference with

prospective contracts claim.  Plaintiff's Complaint fails to identify the type of contracts allegedly

harmed by Defendants' conduct.  Although Plaintiff notes in its Response to Defendants' Motion

to Dismiss that Defendants interfered with Plaintiff's ability to book celebrity appearances and

banquet hall services (See Pl.'s Resp. to NLNA Mot. to Dismiss, at p. 9), it fails to reference any

contracts to this effect in the Complaint.  Because Plaintiff has failed to identify what contractual

relationships were threatened by Defendants' alleged actions, it has insufficiently plead this

claim.  However, this Court, acting within its discretion, will grant Plaintiff leave to amend its

Complaint as to its tortious interference with prospective contractual relations claim only.  This

leave to amend does not extend to any other claims at issue.


## CONCLUSION

　　　　For the foregoing reasons, this Court grants in part and denies in part Defendants' Motion

to Dismiss.  The Motion is granted as to Count IV (excluding statements made relating to Exhibit

I in Paragraph 87(b)); Count V; Count VIII (excluding statements made in a July 30, 2012

email); Count IX, Count X, Counts XI and XII (excluding statements made in April 2, 2012

email to Yishai Kedar); Count XIII; and Count XIV.  Defendants Motion to Dismiss is also

granted as to Count XVIII.  Plaintiff is granted leave to amend its complaint to remedy the

deficiency in this tortious interference with prospective contractual relations claim.  This leave to

amend applies to this claim <u>only</u>.  The Motion is denied in all other respects.

An appropriate Order follows.